**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TERA WILSON, individually and on behalf** | : | |
| **of her Minor Daughter, JANE DOE** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **Case No: 2.06-CV-642** |
| | : | |
| **COLUMBUS BOARD OF EDUCATION,** | : | **JUDGE MARBLEY** |
| *et al.* | : | |
| | : | **MAGISTRATE JUDGE KING** |
| **Defendants.** | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motions for Summary Judgment. Plaintiff

Tera Wilson ("Plaintiff Wilson" or "Plaintiff"), individually and on behalf of her minor daughter,

Plaintiff Jane Doe ("Jane Doe" or "Doe"), brought (1) claims under 42 U.S.C. § 1983; (2) claims

under state tort law for negligence, recklessness, and wantonness, negligent training,

supervision, and administrative practices, infliction of emotional distress, and loss of consortium;

(3) and a claim for punitive damages against the following Defendants: (A) Columbus Board of

Education ("Defendant CBE"), (B) Ofir Sisco ("Defendant Sisco"), (C) Michelle Hooper

("Defendant Hooper"), and (D) Kerry Myers ("Defendant Myers"). Defendants CBE and Sisco,

Hooper, and Myers have separately moved for summary judgment. Plaintiff Jane Doe has also

moved for summary judgment with respect to Count V of the Second Amended Complaint

against Defendant Sisco.

For the reasons set forth below, the Court: (1) **GRANTS in PART** and **DENIES in**

**PART** Defendant CBE and Sisco's Motion for Summary Judgment; (2) **GRANTS** Defendant

Hooper's Motion for Summary Judgment; (3) **GRANTS in PART** and **DENIES in PART**

Defendant Myers's Motion for Summary Judgment; and (4) **DENIES** Plaintiff Jane Doe's Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual History

### 1. The Parties and Their Interactions Prior to January 18, 2005

During the 2004-2005 school year, Plaintiff Jane Doe was an eighth grade student at Woodward Park Middle School ("Woodward Park"). Jane Doe lived with her mother, Plaintiff Wilson, and her stepfather, Albert Wilson ("Mr. Wilson"), with whom she lived almost all of her life. Beginning when Jane Doe was in sixth grade, Mr. Wilson molested Jane Doe. This sexual abuse continued for approximately two years, until February 2005.

Woodward Park is a middle school in the Columbus City School District. The school district is operated by the CBE. The CBE is a political subdivision of the State of Ohio and is engaged in the governmental function of providing its students with a public education. The CBE adopted a child abuse reporting policy that set out employees' duties pursuant to Ohio Rev. Code Ann. § 2151.421. This policy required any employee to immediately report knowledge or suspicion of child abuse to the Franklin County Children Services ("FCCS") or other law enforcement agency. Therefore, failure to comply with the reporting policy would be not only a violation of the Ohio Rev. Code, but also a violation of school policy.

The CBE operates under a series of federal and state statutes and regulations, including Ohio Rev. Code § 3319.073, which requires the CBE to provide in-service training in prevention of child abuse for persons employed in the district. The CBE held specific in-service training

relating to the duty to report child abuse in 2002.[1] The CBE also entered into a Memorandum of Understanding for the Investigation of Child Abuse and Neglect on April 28, 2004. As a result of this Memorandum, the Office of Student Assistance, Intervention and Outreach issued a Pupil Services Handbook for the 2004-2005 school year that specifically included information relating to the responsibility of CBE employees relating to reporting abuse. The CBE also presented a session at the administrator in-service training at the beginning of the 2004-2005 school year where the statutory duty to report child abuse was reviewed.

During the 2004-2005 school year, Defendant Sisco was an assistant principal at Woodward Park. As assistant principal, Sisco dealt primarily with student discipline issues. She had to discipline Jane Doe numerous times during the school year; and thereby, had met with Jane Doe several times prior to January 18, 2005.[2]

During that school year, Defendant Hooper was employed at Woodward Park as a guidance counselor. Hooper met with Jane Doe three times prior to January 18, 2005. During their first encounter, Hooper felt Jane Doe was responsive to their discussion of how to avoid future disciplinary problems. Hooper met with Jane Doe a second time when she heard that some female students were going to fight due to Jane Doe giving other students gifts. Hooper met with Jane Doe a third time due to a teacher referral regarding unruly and aggressive behavior. Hooper did not feel that Jane Doe was responsive in these subsequent meetings.

The teacher referral that precipitated the third meeting was made by Defendant Myers, Jane Doe's basketball coach and computer teacher. Myers made the referral because she was

---

[1] Another in-service training relating to the duty to report child abuse was held in 2005, but this occurred after the events giving rise to this case.

[2] The dates of these meetings are not in the record.

concerned about Jane Doe's aggressive behavior. After meeting with Jane Doe, Hooper encouraged Myers to continue trying to talk to Jane Doe because Doe and Myers seemed to have rapport and Hooper did not have any success in the meeting. Hooper also told Myers that if Jane Doe did open up to Myers, she should let Hooper know so Hooper could try to speak with Jane Doe again.

Jane Doe claims that she told Defendant Myers that she was being abused by her stepfather in early January 2005. As Jane Doe was suspended from school and out of school on holiday break between December 15, 2004 and January 11, 2005, presumably, the conversation took place the week of January 11, 2005. According to Jane Doe, she and her friend PK went to Myers's computer lab and PK encouraged Jane Doe to tell Myers about the molestation. After refusing several times, Jane Doe indicated that she told Myers she was being sexually abused by her stepfather. Myers allegedly responded that she would lose her job if she did not tell someone. Jane Doe asked her to respect the fact that she did not want her to tell anyone. Myers disputes that this conversation ever occurred.

### 2. Events of January 18, 2005

On January 18, 2005, Jane Doe had a meeting in Sisco's office due to a disciplinary problem. While Jane Doe waited outside Sisco's office, she overheard Sisco giving another student an out-of-school suspension. The boy became upset and told Sisco not to suspend him. According to Sisco, the boy did not mention anything about abuse or being disciplined by his parent. According to Jane Doe, the boy said to Sisco "You don't know what will happen to me if I get suspended or if – something is going to happen 'cause I'm – he's like – he said he's in a foster home and that he would get abused or something like that. I don't remember his exact

-4-

words, but that's what he said." Regardless of what was said, Jane Doe jumped in the conversation and said something like "I understand how you feel." Then she started to sob. Sisco sent the other student back to class. Sisco asked Jane Doe why she was sobbing and noticed Jane Doe's sadness, but Jane Doe would not respond. Consequently, Sisco asked Hooper to come speak with Jane Doe, as Hooper was a counselor.

Jane Doe does not remember the exact conversation, but claims that Sisco and Hooper told her that if something was going on, she should tell them and they could help her. Jane Doe alleges she kept asking what would happen if something was going on. Jane Doe also noted that Sisco and Hooper repeatedly told her that she needed to tell them what was going on because they did not understand what she was saying. Hooper alleges Jane Doe indicated that Myers knew something was wrong with Jane Doe, but did not know the specific problem. Hooper recalls that Jane Doe said, "Ms. Myers knows I'm unhappy, but she doesn't know why." Hooper observed that Jane Doe was upset, crying, and then non-responsive. Hooper could not ascertain the cause of Jane Doe's demeanor. Hooper did not notice any "red flags" from this meeting indicating to her there had been abuse. Sisco excused Jane Doe and told her and Hooper that she would call Jane Doe's mother to discuss the matter. Jane Doe did not tell Sisco or Hooper that she was being abused by her stepfather. Jane Doe did not have any other discussions with either Sisco or Hooper about the situation.

At the end of that school day on January 18, 2005, Sisco met with Hooper and Myers to discuss their observations of Jane Doe. Sisco and Hooper do not recall Myers mentioning any previous conversations with Jane Doe during this time and Myers did not say anything about Jane Doe being abused. Sisco told them she was going to contact Jane Doe's mother.

After the meeting with Hooper and Myers, Sisco returned to her office and prepared an Incident Report describing her understanding of what transpired that day. Sisco did not collaborate with Hooper or Myers in preparing the Incident Report. In that Incident Report, Sisco wrote,

> [Jane Doe] made comments that strongly suggested some type of sexual abuse that was going on at home. [Jane Doe] repeatedly claimed that her mother would not believe her and that her mother was very happy now. While [Jane Doe] was talking, she continues to sob! Although, she continued to make comments about some type of problem that was going on at home, she would not come out and report an abusive situation.

She also wrote,

> During the conversation, [Jane Doe] indicated that she had talked about the situation with another female student and with Ms. Myers (computer teacher). However, she felt she could not trust Ms. Hooper or me. At this point we informed [Jane Doe] that a conference with her mother would help us clear this situation. At this point, she got up and left the room.

Finally she wrote about her meeting with Hooper and Myers,

> We agreed that the student had demonstrated more aggression in the last few months prior to Christmas break. [Jane Doe's] comments regarding some abusive situation at home were mentioned to a friend, a teacher and now in my office. These "flags" seem to point to a problem that she is afraid to tell an adult or authority in school. Our report may not have strong evidence, but is sufficient to raise a concern at our school level.

(Doc. No. 62, Exhibit 1).

At the bottom of the page, Sisco typed in a line for a date for reporting to FCCS and a line for the name of the FCCS intake officer taking the report. When she finished with the Incident Report, however, Sisco placed the Incident Report in Jane Doe's cumulative file. She did not call FCCS or the police to report a suspicion that Jane Doe was being sexually abused at home. Sisco alleges that she did not believe she had sufficient evidence to make an actual report of abuse, but had a "sense" of something. Sisco admitted that her "sense" that abuse was

occurring was subjective, and could be based in part on the fact that a similar situation happened with one of her own children.

After January 18th, Sisco attempted to contact Plaintiff Wilson on several occasions. Sisco's efforts are documented in a Reflective Report, prepared by Sisco on June 1, 2005, at the request of Dr. Marvenia Bosley, Deputy Superintendent. According to the Reflective Report, Sisco attempted to contact Plaintiff on seven separate occasions, in a variety of ways, before February 7th but she never responded to Sisco's calls or messages. On February 8th, when Sisco and Plaintiff did finally meet, Sisco told Plaintiff that she had tried to call the house, but was never able to reach her.

### 3. Out-of-School Suspension

On January 25th, Sisco placed Jane Doe on a ten day out-of-school suspension for shoving another student, and verbally abusing and swearing at a substitute teacher. Sisco knew that by suspending Jane Doe, she would be required to remain in her home during the school day. At that time, Sisco had not reported to anyone that she suspected that Jane Doe was being sexually abused.

From January 26th through February 7th, Jane Doe was alone with her stepfather during the school hours because her mother was working and her other siblings were at school. According to Jane Doe, because no one else was around, the abuse escalated. Jane Doe alleges she was vaginally raped by Mr. Wilson for the first time during school hours on February 7, 2005.

### 4. Admission of Abuse and Report to FCCS

On February 8th, Plaintiff, Jane Doe, and Mr. Williams went to the CBE principal's

office to discuss a different discipline situation. According to Plaintiff, Sisco came in and asked to speak with her. Plaintiff left and went with Sisco. Sisco showed the Plaintiff the Incident Report Sisco had written. Mr. Wilson and Jane Doe were not present at that time. Sisco then told Plaintiff that she was going to bring Mr. Wilson and Jane Doe into the room and that she was going to read the letter in front of them. Plaintiff Wilson also alleges that Sisco told her that Sisco wanted her to watch her husband's response when Sisco read the letter to him in front of Plaintiff and Jane Doe. Sisco claims that she has no recollection of meeting with Plaintiff alone. Rather, she claims she brought all three of them into her office and read the letter to all three of them at the same time.

After Sisco read the letter to them, Jane Doe would not tell her mother what was wrong and denied that anything had happened. Plaintiff and Mr. Wilson agreed that any issues could be taken care of at home. Once they arrived home, Jane Doe admitted to her mother that Mr. Wilson had raped her and that he had been molesting her for some time. Mr. Wilson also admitted to these actions and then left for work. Plaintiff Wilson called the police and Mr. Wilson was arrested at work. He eventually pled guilty to five counts of rape and was sentenced to five years in prison.

On February 9, 2005, the investigating police detective for the Columbus Division of Police, Detective Lisa McKissick, went to Woodward Park to meet with Jane Doe about the case. While there, she met with Defendant Sisco. Detective McKissick told Sisco that Mr. Wilson had been arrested for sexually abusing Jane Doe. After Detective McKissick left, Sisco called FCCS and read the intake office the Incident Report. This call was Defendant Sisco's first communication to FCCS or any other authority about this matter. After this call, Sisco

faxed a copy of the Incident Report to FCCS. Sisco claims that her intention was not to report

abuse, but to report this situation to FCCS to allow them to follow up as they deemed necessary.

## B. Procedural History

This matter was originally filed in the Franklin County Court of Common Pleas on July

8, 2005 by Plaintiff Wilson, both individually and as the parent and natural guardian of Jane

Doe, against the CBE, and its employees, Sisco, Myers, and Hooper and John Does #1-10. This

case involves allegations that the CBE employees failed to report sexual abuse perpetrated upon

Jane Doe by her stepfather, Mr. Wilson.

Plaintiffs amended their Complaint and added federal causes of action. As a result,

Defendants jointly removed the case to this Court on July 27, 2006. On September 18, 2007,

Plaintiffs filed a Second Amended Complaint, to substitute Attorney Douglas Wrightsel as

Guardian of the Estate of Jane Doe, a minor, as the real party in interest, since custody has been

removed from Plaintiff Wilson.

On March 31, 2008, Defendants CBE and Sisco moved for summary judgment jointly,

and Defendant Hooper and Defendant Myers each separately moved for summary judgment. On

that same date, Plaintiff Jane Doe moved for summary judgment against Defendant Sisco as to

Count V[3] of the Second Amended Complaint.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such

that] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(C). But

---

[3]Count V is a 42 U.S.C. § 1983 claim. Plaintiffs assert that Sisco acted with deliberate indifference to the known risk fo danger of abuse to Jane Doe, and that, as a result of this conduct, Jane Doe's constitutional rights were violated.

"summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rest upon its mere allegations." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Though some of the claims in this case probe into the state of mind of the Defendants, cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Kleiber v. Honda of America Mfg., Inc.*, 420 F.Supp. 2d 809, 814 (S.D. Ohio 2006).

## IV. LAW AND ANALYSIS

Plaintiffs assert a number of claims against Defendants for violations of 42 U.S.C. § 1983, violations of state tort law, and punitive damages.

## A. § 1983 CLAIMS

Section 1983 of 42 U.S.C. provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To succeed on a claim for a violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him of his rights secured by the United States Constitution or its laws. *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). By its terms, § 1983 creates no substantive rights; it merely provides a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 815 (1985).

Plaintiffs bring a § 1983 claim against Defendant Sisco in Count V of their Second Amended Complaint alleging Sisco acted with deliberate indifference to the known risk of danger of abuse to Jane Doe by placing her on a ten day out-of-school suspension, and that, as a result, Jane Doe's constitutional rights were violated. Plaintiffs also claim that the CBE violated § 1983 because it had an unconstitutional policy discouraging its employees from reporting abuse, that it failed to train its employees to report abuse, and that it failed to supervise its employees in this regard.

### 1. § 1983 Claim Against Defendant Sisco

Defendant Sisco does not dispute that she is a person who was acting under color of state law at the time of this incident. Therefore, the Court must determine whether Defendant Sisco deprived Plaintiff Jane Doe of her constitutional rights.

Plaintiffs allege that Defendant Sisco violated Jane Doe's constitutional rights by placing her on a ten day out-of-school suspension when, according to the Incident Report Sisco created on January 18, 2005, comments made by Jane Doe "strongly suggested some type of sexual abuse in the home." Plaintiffs assert that Jane Doe has a liberty interest protected under the Due Process clause of the Fourteenth Amendment of the United States Constitution to be free from suffering harm or being rendered more vulnerable to harm by the affirmative actions

of the state. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). Defendant Sisco had discretion about whether or not to suspend Jane Doe out-of-school. Plaintiffs claim Defendant Sisco placed Jane Doe in enhanced danger of (i.e. rendered her more vulnerable to) sexual abuse and rape by Mr. Wilson when she placed Jane Doe on out-of-school suspension knowing that Jane Doe would be restricted to her home with her sexual abuser.

The state generally does not have an affirmative duty to protect its citizens from private acts of violence. *Kallstrom*, 136 F.3d at 1066 (6th Cir. 1998); *Ewoloski v. Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002). The Court of Appeals for the Sixth Circuit, however, has recognized the state-created-danger theory of constitutional liability. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 464 (6th Cir. 2006). Pursuant to the state-created-danger theory, a governmental actor can be held responsible for an injury committed by a private person if:

> (1) an affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person;
>
> (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and
>
> (3) the governmental actor had the requisite degree of culpability.

*McQueen*, 433 F.3d at 464. Construing all evidence in the light most favorable to the Plaintiffs, a reasonable jury could find that Defendant Sisco's suspension of Jane Doe satisfies this test.

First, a reasonable jury could conclude that Defendant Sisco's suspension of Jane Doe increased the risk that Jane Doe would be exposed to sexual abuse by Mr. Wilson. The record shows that Mr. Wilson was at home during the day. Consequently, issuing Jane Doe an out-of-school suspension, for which she was required to be home during the day, gave her stepfather more time alone with her. Also, during the suspension, Jane Doe's siblings were at school.

Therefore, her stepfather was completely alone with her during the daytime hours, as opposed to after school hours when her siblings and mother may have been around. During school hours while Jane Doe was suspended, Jane Doe was vaginally raped. Jane Doe also submitted an affidavit stating that during the suspension, "Mr. Wilson was more demanding and touched me more often and took longer because no one else was around and because he knew that no one would be around the house until after school let out and my sisters came home."

Second, a reasonable jury could conclude that Sisco's suspension of Jane Doe especially endangered Jane Doe, as this action was particularly directed at her and not a larger group of persons. Third, a reasonable jury could conclude that Defendant Sisco acted with the requisite degree of culpability. When there is an opportunity for "reflection and unhurried judgments" a plaintiff must show that the government actor acted with deliberate indifference to establish a claim under the state-created-danger theory. *Arledge v. Franklin County, Ohio*, 509 F.3d 258, 263 (2007) (citing *McQueen* 433 F.3d at 469). This means that the plaintiff must show that the state official "knows of and disregards an excessive risk to [the victim's] health or safety." *Farmer v. Bennan*, 511 U.S. 825, 837 (1994). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Having drawn the inference, the official must act or fail to act in a manner demonstrating "reckless or callous indifference" toward the individual's rights. *Ewoloski*, 287 F.3d at 509 (citing *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 797 (1st Cir. 1990)).

A reasonable jury could conclude, based upon the Incident Report, that Defendant Sisco suspected Jane Doe was being abused in her home. There is also support in the record that Sisco

suspected it was Jane Doe's stepfather who was abusing her. Sisco wanted to discuss her suspicions of abuse with Plaintiff, not Mr. Wilson, and it is alleged that when Plaintiff and Mr. Wilson finally came to the school, Sisco first read her incident report to Plaintiff, outside of Mr. Wilson's presence. And, it is alleged that Sisco told Plaintiff to watch Mr. Wilson's reaction when Sisco read the letter in front of all of them. It would be reasonable to conclude these actions were taken because Sisco suspected it was Mr. Wilson who was abusing Jane Doe.

There is also evidence from which a reasonable jury could conclude that Sisco suspected that Mr. Wilson would be home with Jane Doe during her suspension. Mr. Wilson alleges he met with Sisco before February 8, 2005 three to four times to discuss discipline issues concerning Jane Doe. These meetings occurred during the school day and Mr. Wilson was available during these times. Jane Doe's mother did not attend these meetings. Therefore, the record suggests Sisco had reason to believe that Mr. Wilson was at home during school hours.

Plaintiffs have presented evidence sufficient to create a genuine issue of material fact as to whether Sisco was aware of facts from which the inference could be drawn that Jane Doe would be home with her abuser during the suspension and as to whether Sisco actually drew that inference, as required to establish a § 1983 violation. Therefore, considering the facts in the light most favorable to the non-movant, a reasonable jury could conclude that Defendant Sisco acted with deliberate indifference in suspending Jane Doe and this suspension increased the risk of harm to Jane Doe at the hands of her stepfather.

### a. Qualified Immunity

Under the doctrine of qualified immunity "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Accordingly, "whether an official may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Poe v. Haydon,* 853 F.2d 418, 422 (6th Cir. 1988) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (internal citation omitted)). If a government official is granted qualified immunity, he or she is immune from suit over the asserted claim. *Haynes v. City of Circleville,* 474 F.3d 357, 362 (6th Cir. 2007). The plaintiff carries the burden of proof to show that the defendant is not entitled to qualified immunity. *Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991).

There is a two-step inquiry for determining whether an official is entitled to qualified immunity: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Swiecicki v. Delgado,* 463 F.3d 489, 497-98 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005)). The relevant inquiry in this case, therefore, is: (1) whether the facts alleged demonstrate a violation of Jane Doe's Fourteenth Amendment right to be free from being rendered more vulnerable to harm by the affirmative actions of Defendant Sisco; and, if so, (2) whether, objectively, a reasonable official in Sisco's position could have believed her conduct to be lawful, considering the state of the law as it existed when she took her challenged action. *See Poe,* 853 F.2d at 423-24. Having already concluded there is a genuine issue of material fact as to whether Jane Doe's Fourteenth Amendment right was violated, the only issue is whether the right was so clearly established

that Sisco's actions were objectively unreasonable.

As discussed above, the state-created-danger theory of liability was clearly established before the events giving rise to this case occurred. Nevertheless, most rights are "clearly established" at some level of generality, so "immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly' violated." *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir. 1997). Therefore, whether a law is "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008). The Supreme Court has held, however, that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In fact, "[a] right can be clearly established even if there is no case involving fundamentally similar or materially similar facts if the premise of a prior case alerts officials to the clear applicability of the legal principle to a subsequent set of facts." *Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003) (internal citations and quotation marks omitted); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) ("general statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful").

There is no Sixth Circuit case law involving materially similar facts to this case. However, although Sisco confronted a novel factual circumstance, well-settled precedent of the Sixth Circuit recognizes that in a non-custodial setting, a governmental actor can be held responsible for an injury committed by a private person if that governmental actor increases the

risk of harm to the plaintiff and acts with deliberate indifference. *See Ewolski*, 287 F.3d 492 at 509-510.[4] Therefore, it would have been clear to a reasonable person in Sisco's position that her issuance of the suspension, which placed Jane Doe in a dangerous environment, could subject Sisco to constitutional liability.

In light of the analysis above, the facts asserted by both parties, and Jane Doe's clearly established constitutional right, this Court concludes that a genuine issue of material fact exists as to whether Sisco's actions were objectively unreasonable. Defendant Sisco is thus not entitled to qualified immunity. Defendant Sisco's Motion for Summary Judgment with regards to Count V of the Second Amended Complaint is therefore **DENIED**, and Plaintiff Jane Doe's Motion for Summary Judgment is therefore also **DENIED**.

## 2. § 1983 Claim Against Defendant CBE

Plaintiffs have also asserted a § 1983 claim against CBE, the employer of Sisco, for having an unconstitutional policy that discouraged teachers from reporting abuse, and for failing to train and supervise employees. In Plaintiff Jane Doe's Responses in Opposition to Defendants' Motions for Summary Judgment, Plaintiff has reduced her failure to train and supervise claim to a failure to train claim, and has not presented any evidence pertaining to supervision. A government entity cannot be held liable under a theory of respondeat superior pursuant to § 1983; however, such an entity can be held liable when the alleged constitutional violation is caused by the entity's official policy. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978). To establish causation, a plaintiff must show that the

---

[4]Since the events giving rise to this case arose, the Sixth Circuit has analyzed three cases with school officials under the state-created-danger theory. *See S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008); *McQueen*, 433 F.3d 460; *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907 (6th Cir. 1995).

official policy in question is the "moving force" behind the constitutional violation. *Id.* at 694; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Having already concluded there is a genuine issue of material fact as to whether Jane Doe's Fourteenth Amendment right was violated, the remaining inquiry is whether CBE had a policy which was the "moving force" behind the violation.

### a. Policy Discouraging Reporting Child Abuse

Plaintiffs allege that there was a policy discouraging school employees from reporting child abuse. However, the evidence presented shows that CBE adopted an express policy requiring employees to report knowledge or suspicion of child abuse to FCCS or another law enforcement agency. CBE held a specific in-service training program relating to the duty to report child abuse in 2002. CBE also entered into a Memorandum of Understanding for the Investigation of Child Abuse and Neglect on April 28, 2004. As a result of this Memorandum, the Office of Student Assistance, Intervention and Outreach issued a Pupil Services Handbook for the 2004-2005 school year that specifically included information relating to the responsibility of CBE employees to report child abuse. In addition, CBE presented a session at the administrator in-service training at the beginning of the 2004-2005 school year that reviewed the statutory duty to report child abuse.

The record shows that CBE had a policy *encouraging* school employees to report child abuse. There has been no evidence presented by Plaintiffs to the contrary. They do not allege that anything was promulgated by the CBE discouraging reporting child abuse, or that any policymaker made a decision which would constitute such a policy. Consequently, summary judgment for CBE with regards to this issue is **GRANTED**.

### b. Policy of Inadequate Training

Plaintiffs also assert that CBE had a policy of inadequate training. A municipality's failure to train its employees is actionable as a "policy" or "custom" under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). However, there are limited circumstances in which an allegation of "failure to train" can be the basis for liability under § 1983. *Id.* at 387. In § 1983 actions for failure to train, the plaintiff must prove: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the government's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Focusing on the first and second prongs, the Sixth Circuit identifies two situations which would justify finding that CBE was deliberately indifferent: (1) failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction; and (2) failure to act in response to repeated complaints of constitutional violations. *Ellis ex. Rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700-01 (6th Cir. 2006). There has been no evidence presented regarding complaints of other constitutional violations. Instead, Plaintiffs allegation is that CBE was deliberately indifferent because it failed to provide adequate training in light of foreseeable consequences that could result from a lack of instruction. This means Plaintiffs must set forth facts to support that there was an "obvious potential" for constitutional violations on the part of CBE due to insufficient training and that CBE ignored this risk. *See Plinton v. County of Summit,* 540 F.3d 459, 464-65 (6th Cir. 2008).

As noted before, CBE held a specific in-service training program relating to the duty to

report child abuse in 2002.[5] Also, CBE presented a session at the administrator in-service training at the beginning of the 2004-2005 school year where the statutory duty to report child abuse was reviewed. As Defendant Sisco was an administrator, she should have been present at this session. There has been no evidence presented that she was not there.

Furthermore, Defendant Sisco stated that she was trained that if a child is in any way threatened with abuse, school officials should report to FCCS. There was no evidence presented that Sisco did not know about her statutory duty to report knowledge or suspicion of abuse pursuant to Ohio Rev. Code 2151.421. Sisco could not specifically recall training received from CBE regarding reporting sexual abuse, but she did not testify that she was not trained. The Supreme Court recognizes:

> [The fact] that a particular officer may be unsatisfactorily trained [does] not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. [. . . ] Adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Harris*, 489 U.S. at 390-91.

In addition to the training, policies of CBE were promulgated to employees in written form to provide guidance as to their duties if they suspected child abuse. The Pupil Services Handbook for the 2004-2005 school year, distributed to school employees, including Sisco, contained information related to the responsibility of employees to report abuse. It mandated that Columbus Public Schools will, "within one hour of suspicion, report incidents of suspected child

---

[5]Another in-service training program regarding the duty to report child abuse was held in 2005 after the events giving rise to this case occurred. This is consistent with CBE's policy stated in its policy manual that "All newly-employed professional staff shall complete at least four hours of in-service training within three years of the date of employment" on child abuse prevention.

abuse and/or neglect." And, it listed a number for an abuse hotline. Section 5161.8 of the policy

manual, amended May 4, 2004, states, "Any employee who knows or suspects that a child . . .

has suffered or faces a threat of . . . abuse or neglect . . . must immediately report that knowledge

or suspicion to the Franklin County Children's Services board or to other local enforcement."

And, it mandates that "Employees . . . should not undertake any independent investigation . . ."

(*Id.*)

In light of the training provided by CBE in addition to the existing written policies

promulgated to employees that they could turn to for guidance as to what their responsibilities

were when they suspected abuse, Plaintiffs have not produced evidence showing that CBE failed

to provide adequate training in light of foreseeable consequences that could result from lack of

instruction. Therefore, Plaintiffs have not shown CBE acted with deliberate indifference.

Turning to the third prong, Plaintiffs must "show the particular injury occurred because

of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir.

1993). Therefore, Plaintiffs must show that Jane Doe's injury occurred because of CBE's alleged

inadequate training. In Sisco's deposition, she admitted that she knew she had a duty to report

child abuse. However, she would not concede that she ever suspected abuse. According to her,

she did not report to FCCS because she did not believe she suspected child abuse; she only

"sensed" something was wrong. When she finally reported to FCCS, she maintained that her

intention was not to report abuse, but to report this situation to FCCS to allow them to follow up

as they deemed necessary. Therefore, Sisco's failure to report abuse was not due to a lack of

training; rather, it was due to her personal belief that her "sense" did not rise to a level to justify

reporting.

Though Sisco may have exercised poor judgment and may be personally liable, Plaintiffs have not shown that CBE provided inadequate training, that CBE acted with deliberate indifference, or that CBE's lack of training caused Sisco to not report. As such, summary judgment for CBE with regards to this issue is **GRANTED**.

## B. STATE TORT LAW CLAIMS

Plaintiffs bring state tort law claims against Defendants for negligence, recklessness, and wantonness, negligent training, supervision, and administrative practices, infliction of emotional distress, and loss of consortium. Plaintiff Jane Doe has conceded that Defendant CBE is statutorily immune from the asserted state tort law claims against it. Pursuant to Ohio Rev. Code § 2744.03(B)(5), a political subdivision is immune unless a statute expressly imposes liability. Since no statute, including Ohio Rev. Code § 2151.421, expressly imposes liability for the asserted state tort law claims, CBE is immune.[6] Therefore, summary judgment for CBE with regards to Count II for negligent training, Count III for negligent supervision, Count IV for negligent administrative practices, and Count VIII for loss of consortium is **GRANTED**.

### 1. Negligence/ Recklessness/ Wantonness

Ohio Rev. Code § 2151.421(A)(1)(a) provides, in pertinent part:

No person prescribed in division (A)(1)(b) of this section who is acting in an official or

---

[6]Furthermore, while in state court, the Franklin County Court of Common Pleas already heard and denied Plaintiffs' respondeat superior claim against the City. *Wilson v. Columbus Bd. Of Ed.*, No. 05CVC07-7338 (Franklin Count Court Of Common Pleas May 14, 2006) (Doc. No. 55, Exhibit 1). The court held, "R.C. § 2151.421(A)(1)(a) does not expressly impose civil liability to political subdivisions or their employees for failure to report known or suspected child abuse, but instead only states that no employee shall fail to report such abuse and imposes only criminal liability for such failure. . . . Moreover, the current versions of R.C. § 2744.03(A)(6)(c) and § 2744.02(B)(5) specifically state that civil liability must be expressly imposed upon the political subdivision or its employee by a statute of the Revised Code. . . . Accordingly, since the statute does not expressly impose civil liability, Defendant Columbus Board of Education is immune from suit pursuant to R.C. § 2744.02(B)(5)." *Id.* Therefore, Plaintiffs are barred from bringing a respondeat superior claim based on issues already litigated in state court.

professional capacity and knows or suspects that a child under eighteen years of age . . . has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the entity or persons specified in this division.

Pursuant to this statute, Defendants Sisco, Myers and Hooper had a duty to report immediately knowledge or suspicion of abuse or threat of abuse of a minor. Plaintiffs allege that Defendants Sisco, Hooper, and Myers had such knowledge or suspicion and failed to report said abuse; and Defendant Sisco had such suspicion, and in spite of that, suspended Jane Doe and placed her back into her home with her abuser. Plaintiffs allege that this conduct of Defendants Sisco, Hooper, and Myers was negligent, reckless, willful and wanton, in bad faith, and was perpetrated with knowing disregard for the safety and well being of Jane Doe.

Employees of political subdivisions are statutorily immune from liability unless one of the following three exceptions applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision relating to an employee.

Ohio Rev. Code § 2744.03(A)(6). Defendants Sisco, Hooper, and Myers's actions were in the scope of their employment, and Ohio Rev. Code § 2151.421, the statute cited by Plaintiffs as creating a duty to Plaintiffs, does not impose civil liability. Therefore, only the second exception

could conceivably apply.

In Plaintiff Jane Doe's Responses in Opposition to Defendants' Motions for Summary Judgment, Plaintiff has reduced her claims to allegations that Defendants actions were *reckless*. Defendants have admitted that they had a duty to immediately report knowledge or suspicion of abuse or threat of abuse of a minor. Therefore, the only issues before this Court are whether the Defendants recklessly breached that duty because they knew or suspected that abuse was occurring, and if Defendants' reckless conduct caused Jane Doe to be injured.

### a. Recklessness Claim Against Defendant Sisco

There has been no allegation that Jane Doe or anyone else ever told Defendant Sisco that Jane Doe was being abused. Hence, Plaintiffs' recklessness claim is based entirely on the allegation that Sisco suspected abuse. Jane Doe has alleged that Sisco recklessly failed to report her suspicion of abuse to the police or FCCS. To determine whether a defendant's actions were reckless, Ohio courts have looked to the Restatement (Second) of Torts § 500 (1965). *See Marchetti v. Kalish*, 559 N.E.2d 699, 700 n.2 (Ohio 1990). That section provides, in pertinent part:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

There is no dispute that Defendant Sisco thought there was a "strong suggestion" and she had a "sense" that Jane Doe was being sexually abused. There is no dispute that Defendant Sisco did not report her "sense" of abuse until fifteen days after she wrote that she had sensed abuse was occurring. And, there is no dispute that Jane Doe was raped between the time that Defendant

Sisco sensed abuse was occurring and the time that Defendant Sisco reported the abuse.

Furthermore, of relevance, the Franklin County Court of Common Pleas already considered this issue under the Ohio standard of summary judgment and determined that there are sufficient facts in this case from which a reasonably jury could find that Defendant Sisco acted recklessly in failing to report her suspicion that Jane Doe was being sexually abused in her home. Therefore, whether Defendant Sisco acted recklessly in failing to report right away to FCCS is a factual issue not appropriate for resolution on summary judgment.

Jane Doe has also alleged that Defendant Sisco acted recklessly in suspending Jane Doe, thereby placing her in a dangerous environment. A reasonable jury could conclude that Defendant Sisco acted with a reckless state of mind in suspending Jane Doe because she had reason to know that Jane Doe's stepfather was sexually abusing her and that her stepfather would be home with her during the day while she was suspended. A reasonable jury could also conclude that Defendant Sisco's suspension of Jane Doe caused her to be injured, in that the abuse escalated and she was vaginally raped during this time. Therefore, there is a genuine issue of material fact as to whether Defendant Sisco acted recklessly in suspending Jane Doe.

Defendant Sisco's Motion for Summary Judgment is **DENIED** in regards to the claim that Sisco acted recklessly in failing to report abuse, and in regards to the claim that Sisco acted recklessly in suspending Jane Doe.

### b. Recklessness Claim Against Defendant Hooper

There has been no allegation that Jane Doe or anyone else ever told Defendant Hooper that Jane Doe was being abused. Therefore, this claim is based entirely on the allegation that Hooper suspected abuse. Jane Doe has alleged that Defendant Hooper recklessly failed to report

her suspicion of abuse to the police or FCCS. As recently held by the Ohio Supreme Court, pursuant to the version of Ohio Rev. Code § 2151.421 in effect when the actions giving rise to this case occurred, in determining whether a person knows of or suspects child abuse for purposes of reporting it to the proper authorities, the standard is subjective. *See Kraynak v. Youngstown City Sch. Dist. Bd. of Educ*, 889 N.E.2d 528, 529 (Ohio 2008).

It is true that based on Defendant Sisco's observations of Jane Doe, Defendant Sisco had a "sense" that abuse was occurring. However, Defendant Sisco had more and different interactions than Defendant Hooper had with Jane Doe. Notably, on January 18, 2005, Defendant Sisco interacted with Jane Doe before she asked Defendant Hooper to come speak with Jane Doe. And Defendant Sisco's "sense" arose in part from a personal experience of having her own child abused. Even if Defendant Sisco subjectively suspected abuse, this does not support that Defendant Hooper subjectively suspected abuse.

No one, including Jane Doe, ever told Defendant Hooper that Jane Doe was being abused. Defendant Hooper observed Jane Doe was upset and getting into trouble. However, many teenagers are known to be upset over matters, often issues at home, that are in no way related to abuse. Defendant Hooper never wrote a report that she suspected abuse, and never told anyone else that she suspected abuse.

Cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Kleiber*, 420 F.Supp. 2d at 814. Plaintiff Jane Doe may not rest upon mere allegations that Defendant Hooper suspected abuse. Construing all evidence in the light most favorable to Plaintiff, a reasonable jury could not conclude that Defendant Hooper knew or suspected that Jane Doe was being abused. Defendant Hooper's Motion for Summary Judgment regarding

whether she acted recklessly is **GRANTED**.

### c. Recklessness Claim Against Defendant Myers

Jane Doe has alleged that Defendant Myers recklessly failed to report her knowledge of abuse to the police or to FCCS. There is an obvious factual dispute as to whether Jane Doe told Defendant Myers about the abuse. For purposes of summary judgment, however, all evidence must be construed in the light most favorable to the non-movant. A reasonable jury could find Jane Doe's testimony credible. As such, there is a genuine issue of material fact about whether Jane Doe told Defendant Myers that she was being sexually abused by her stepfather, and Myers failed to report that allegation to the police, FCCS, or anyone else at her school, including Defendant Sisco.[7]

Likewise then, a reasonable jury could find that Myers's failure to report Jane Doe's allegation was reckless and caused Jane Doe to be further harmed. Therefore, Defendant Myers's Motion for Summary Judgment regarding whether she acted recklessly is **DENIED**.

### 2. Intentional Infliction of Emotional Distress

Plaintiffs assert that Defendant Sisco is liable for intentional infliction of emotional distress. They identify two instances from which liability allegedly arises. First, Plaintiffs allege that Jane Doe experienced emotional distress by being put back into her abusive home while she was suspended from school between January 26, 2005 and February 7, 2005. Second, Plaintiffs

---

[7] At her deposition, Jane Doe's friend described the alleged conversation between Myers and Jane Doe differently than Jane Doe described the conversation. Nevertheless, both Jane Doe and her friend agree that Defendant Myers knew of the abuse. Defendant Myers denies, without qualification, that she ever had a conversation with Jane Doe in which Jane Doe told her anything about abuse. In addition, Jane Doe's grandmother testified at her deposition that she and Jane Doe have talked extensively and openly about the abuse on many occasions and Jane Doe told her grandmother that she had told "no one" at the school about the abuse prior to February 8, 2005 (the date when Jane Doe told her mother about the abuse).

allege that when Defendant Sisco read the Incident Report to Mr. Wilson and Plaintiff Wilson in the presence of Jane Doe, this was done with no forethought as to the possible danger to the Plaintiffs created by the disclosure, including the possibility of violence by Mr. Wilson. This action placed the Plaintiffs in immediate danger and grave fear for their safety and well-being, and will continue to cause Plaintiffs severe and enduring emotional and physical injury.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the defendant's conduct was the proximate cause of the plaintiff's psychic injury; and (4) the plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Quintile v. Medina County*, No. 1:07CV2413, 2008 WL 2484173, at *8 (N.D. Ohio June 17, 2008) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio App. 1 Dist. 1997)). With regard to the "outrageous and extreme conduct" element, the Ohio Supreme Court explained:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983) (overruled on other grounds) (internal quotation marks and citation omitted), cited in *Martin v. JBS Technologies, LLC*, 443

F.Supp.2d 962, 969-70 (S.D. Ohio 2006).

Plaintiffs have not alleged conduct to support their claims of intentional infliction of emotional distress primarily because no reasonable jury could find Defendant Sisco's conduct was outrageous and extreme and beyond all possible bounds of decency. In hindsight, Sisco may have exercised poor judgment, but she did not act atrociously or do anything "utterly intolerable in a civilized community." Therefore, Defendant Sisco's Motion for Summary Judgment with regards to Count VII of the Plaintiff's Second Amended Complaint is **GRANTED**.

### 3. Loss of Consortium

Plaintiff Wilson alleges that due to the wrongful conduct of Defendants, she has lost the consortium of services, support, society, comfort, and solace of her daughter. She also alleges that she has, and will continue to have, expenditures for medical care and treatment for herself and her daughter. Ohio law recognizes the common-law action for parental loss of consortium of a minor child. *Gallimore v. Children's Hosp. Med. Ctr.*, 617 N.E.2d 1052, 1060 (Ohio 1993). The basis of such a claim is that the third-party tortfeasor negligently or intentionally caused physical injury to the child. *See id.* Therefore, the parent is compensated for a harm done or for losses suffered as a result of injury to the child and the parent-child relationship. *See Rolf v. Tri State Motor Transit Co.*, 745 N.E.2d 424, 426 (2001).

### a. Loss of Consortium Claim Against Defendant Hooper

A parental claim for loss of consortium is derivative of the child's cause of action. *Messmore v. Monarch Mach. Tool Co.*, 463 N.E.2d 108, 110 (Ohio App. 9 Dist. 1983). There has been no evidence presented to support that Defendant Hooper knew or had reason to know that Jane Doe was being abused. Therefore, Defendant Hooper did not act recklessly or negligently in

failing to report that Jane Doe was being abused. As Jane Doe is precluded from recovery against Defendant Hooper, Plaintiff Wilson is, likewise, precluded from recovery against Defendant Hooper. Defendant Hooper's Motion for Summary Judgment with regards to Count VIII of the Plaintiff's Second Amended Complaint is therefore **GRANTED**.

### *b. Loss of Consortium Claim Against Defendants Myers and Sisco*

Plaintiff Wilson has also alleged a loss of consortium claim against Myers and Sisco. She has not, however, put forth any evidence to show how the failure of Defendants Myers or Sisco to report the suspected abuse to the FCCS, as opposed to the actual abuse, caused her to lose the support, society, comfort, or solace of her daughter. Before Myers or Sisco allegedly learned of or suspected abuse, Jane Doe had a substantial history of problems. In sixth grade, Jane Doe received an out-of-school suspension for volatile acts/school disruption. In seventh grade, Jane Doe received an in-school suspension for truancy, an in-school suspension for disruption of class, and community service for disruption of class. Jane Doe almost was not promoted to the eighth grade because her grades were so poor. In September of 2004, her eighth grade year, Jane Doe received two separate in school suspensions for truancy. On December 14, 2004, Jane Doe received a ten day out-of-school suspension for assault/battery on another student.

Defendant Myers allegedly learned of the abuse around the first week of January. As Jane Doe was out of school for almost a month around this time due to her December 14th suspension falling over the holiday break, it can be presumed that Myers learned of the abuse sometime the week of January 11, 2005, the date Jane Doe returned to school. Defendant Sisco allegedly suspected abuse on January 18, 2005. Therefore, the evidence shows that Jane Doe was already having problems before anyone allegedly learned of or suspected abuse.

Even taking as true Plaintiff Wilson's allegation that after January 2005 Jane Doe's behavior deteriorated, and thereby so did her relationship with her mother, resulting in a loss of consortium, Plaintiff's claim fails. Plaintiff cannot establish a causal connection between Defendants Myers and Sisco's failure to report the suspected abuse and Plaintiff's loss of consortium.

Ohio tort law requires a plaintiff establish a genuine issue of material fact as to whether defendant's action was the cause in fact and proximate cause of injury to the plaintiff. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see State v. Wood*, No. 2008-CA-7, 2008 WL 4382701, at *8 (Ohio App. 5 Dist. Sept 26, 2000). The wrongful act must produce a result that would not have taken place without the act. *Petre v. Norfolk Southern Ry. Co.*, 458 F.Supp.2d 518, 527 (N.D. Ohio 2006) (citing *Strother v. Hutchinson*, 423 N.E.2d 467, 471 (Ohio 1981)). It is the plaintiff's burden to prove proximate cause, and if the plaintiff cannot support her allegations with evidence, the issue becomes one of law for the court to decide. *Id.* Defendants cannot be held liable for damages that they did not cause. *See Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 844 N.E.2d 1160, 1167 (Ohio 2006).

According to Plaintiff Wilson's testimony, Mr. Wilson was verbally abusive and controlling and the children were scared of him. He would whip Jane Doe so hard that it sometimes caused bruising, and he paddled her once with a kitchen board and broke it. According to Jane Doe's testimony, Mr. Wilson was sexually abusing her more than once a day for two years before she claims she told Defendant Myers about the abuse and before Defendant Sisco suspected abuse. If Defendants Sisco or Myers had learned about or suspected the abuse early on and could have reported it and prevented much of the abuse from occurring, Plaintiff Wilson might have had a valid claim for loss of consortium. However, Defendant Sisco's failure to report

resulted in potentially three more weeks of abuse, and Defendant Myers's failure to report resulted in potentially four more weeks of abuse.

Given Mr. Wilson's undisputed history of abusing Jane Doe, no reasonable jury could conclude that Defendants Myers or Sisco's failure to report abuse resulted in a loss of consortium to Plaintiff Wilson. Therefore, Defendants Myers's and Sisco's Motions for Summary Judgment with regards to Count VIII of the Plaintiff's Second Amended Complaint are **GRANTED**.

### C. PUNITIVE DAMAGES

Finally, Plaintiffs request punitive damages be awarded based upon the alleged conduct of Defendants Sisco, Hooper, and Myers. The §1983 claim against Defendant CBE, reckless failure to report claim against Defendant Hooper, intentional infliction of emotional distress claims, and loss of consortium claims fail as a matter of law; therefore, the only claims upon which punitive damages could be based are the claims against Defendant Sisco for a violation of § 1983, and against Defendants Sisco and Myers for recklessness.

Punitive damages may be awarded in a §1983 action when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983). For Ohio law claims, punitive damages are awarded only upon a finding of actual malice. *Hall v. Consol. Freightways Corp. of Delaware*, 337 F.3d 669, 676 (6th Cir. 2003) (citing *Rice v. CertainTeed Corp.*, 704 N.E.2d 1217, 1220-21 (Ohio 1999)). Actual malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Schellhouse v. Norfolk & Western Ry. Co.*, 575 N.E.2d 453, 457 (Ohio

1991).

The same factual issues in dispute under the §1983 deliberate indifference analysis and state tort law recklessness analysis are in dispute here. A reasonable jury could find that Defendant Sisco and/or Defendant Myers acted with reckless indifference and/or conscious disregard for the rights and safety of Jane Doe. As no claims remain for Plaintiff Wilson, she is not eligible for punitive damages.

Therefore, Defendant Sisco's Motion for Summary Judgment with regards to punitive damages arising from her deliberate indifference to Jane Doe's constitutional liberty right and from her recklessness is **DENIED**. In addition, Defendant Myers's Motion for Summary Judgment with regards to punitive damages arising from her recklessness is **DENIED**. However, Defendants' Motions for Summary Judgment with regards to punitive damages arising from the §1983 claim against Defendant CBE, reckless failure to report claim against Defendant Hooper, intentional infliction of emotional distress claims, and loss of consortium claims are **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, the Court: (1) **DENIES** Defendant Sisco's Motion for Summary Judgment with regards to Plaintiff Jane Doe's claims for a violation of §1983, recklessness, and punitive damages for the §1983 and recklessness claims, but **GRANTS** Defendant Sisco's Motion for Summary Judgment with regards to Plaintiffs' claims for intentional infliction of emotional distress and Plaintiff Wilson's claims for loss of consortium and punitive damages; (2) **GRANTS** Defendant CBE's Motion for Summary Judgment as to all claims against Defendant CBE; (3) **GRANTS** Defendant Hooper's Motion for Summary Judgment; (4) **DENIES** Defendant Myers's Motion for Summary Judgment with regards to

Plaintiff Jane Doe's claims for recklessness and punitive damages for recklessness, but **GRANTS** Defendant Myers's Motion for Summary Judgment with regards to Plaintiff Wilson's claims for loss of consortium and punitive damages; and (5) **DENIES** Plaintiff Jane Doe's Motion for Summary Judgment.

      **IT IS SO ORDERED**.

                                      **s/Algenon L. Marbley**
                               **ALGENON L. MARBLEY**
                               **UNITED STATES DISTRICT COURT**

**Dated: December 11, 2008**